IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EVA MARIE PETERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:15-cv-751-GMB |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eva Marie Peterson filed this action on October 13, 2015, seeking judicial review of a final adverse decision of the Commissioner of Social Security denying her application for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act. Doc. 1. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). The parties consented to the entry of a final judgment by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and Rule 73.1 of the Local Rules for the United States District Court for the Middle District of Alabama. Docs. 11 & 12. Based upon a review of the parties' briefs, the evidentiary record, and the relevant authority, the court finds that, for the reasons explained below, the Commissioner's decision is due to be AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin, Acting Commissioner of Social Security, as the defendant in this lawsuit. No further action needs to be taken to continue this lawsuit pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). The Clerk of Court is DIRECTED to take the appropriate steps to reflect this change on the docket sheet.

## I.  STANDARD OF REVIEW

The court reviews a social security case to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted).  Indeed, the court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

"Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Jones ex rel. T.J.J. v. Astrue*, 2011 WL 1706465, at *1 (M.D. Ala. May 5, 2011) (citing *Lewis*, 125 F.3d at 1440).  The court must scrutinize the entire record to determine the reasonableness of the decision reached. *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987).  "If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as a finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision." *Jones*, 2011 WL 1706465, at *2 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991)). The court will reverse the Commissioner's

decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991); *Jones*, 2011 WL 1706465, at *2 (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Peterson bears the burden of proving that she is disabled, and she is responsible for producing evidence to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). Specifically, the Commissioner must determine in sequence:

  (1)  Is the claimant presently unemployed?
  (2)  Is the claimant's impairment severe?

> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the claimant unable to perform his or her former occupation?
> (5) Is the claimant unable to perform any other work within the economy?

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. DISCUSSION

**A.     Facts**

Peterson filed her applications for benefits on September 17, 2013, alleging a disability onset date of August 30, 2013 due to fibromyalgia, bipolar disorder, carpal tunnel syndrome, and lupus. Docs. 15-2, 15-4 & 15-5. Peterson's claims were denied at the initial administrative level and on reconsideration. Docs. 15-3 & 15-4.

Peterson requested and received a hearing before an Administrative Law Judge ("ALJ"). Doc. 15-4. After holding a hearing, the ALJ issued a written decision finding that Peterson had the severe impairments of fibromyalgia and dysthymic disorder but that none of those impairments or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 & 416.926). Doc.

15-2 at 14–22.  The ALJ concluded that Peterson had the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can lift and carry no more than 10 pounds occasionally and 8 pounds frequently; the claimant can stand and walk two to four hours in an eight-hour day; the claimant can sit for up to six hours in an eight-hour day; the claimant will need to alternate between sitting and standing by sitting no more than 30 minutes at one time with the ability to stand and stretch for one to two minutes but she will not need to be off task; the claimant is unable to climb ladders, ropes, and scaffolds; the claimant can have no exposure to unprotected heights or dangerous equipment; and the claimant can perform frequent bilateral handling.  Additionally, the claimant is able to understand, remember, and carry out short, simple work instructions; the claimant is able to concentrate and attend for two hours at one time before needing a break; the claimant's time off task can be accommodated by normal breaks; and the claimant can have occasional contact with the public, co-workers, and supervisors.

Doc. 15-2 at 22–23.  Ultimately, based on these findings, the ALJ concluded that Peterson was not disabled within the meaning of the Social Security Act. Doc. 15-2 at 30.

**B.     Issues Presented**

Peterson presents four issues for the court's review: (1) whether the ALJ properly evaluated her fibromyalgia under Social Security Ruling 12-2p; (2) whether the ALJ's credibility determination is supported by substantial evidence; (3) whether the ALJ's decision to assign no weight to the opinion of one of her treating physicians is supported by substantial evidence; and (4) whether the ALJ's assessment of her residual functional capacity is supported by substantial evidence.[2]  Doc. 13.  For the reasons that follow, the court finds that none of the issues presented by Peterson for review merits reversal.  Accordingly, the ALJ's decision is due to be affirmed.

---

[2] These are the issues as presented by Peterson in her brief. *See* Doc. 13 at 4.

C.   **Analysis**

1.   **The ALJ properly applied Social Security Ruling 12-2p.**

Social Security Ruling 12-2p ("SSR 12-2p") provides guidance on the evidentiary showing to establish that a claimant has a medically determinable impairment ("MDI") of fibromyalgia and whether that impairment qualifies as disabling under the Social Security Act. Under this ruling, fibromyalgia is an MDI "when it is established by appropriate medical evidence." SSR 12-2p, 2012 WL 3017612, at *43640 (July 25, 2012). If a claimant is found to have an MDI of fibromyalgia, the normal five-step sequential evaluation process is used to determine whether the claimant is disabled. *See id.* "As with any claim for benefits . . . [the ALJ] must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id.*

Peterson's argument that the ALJ failed to evaluate her fibromyalgia under SSR 12-2p is unpersuasive. The majority of Peterson's argument on this issue focuses on demonstrating that she actually suffers from fibromyalgia. Indeed, Peterson begins by taking issue with the ALJ's purported attempt to "undermine" her diagnosis of fibromyalgia. Doc. 13 at 4. She then continues with a detailed discussion of how the ALJ not only misinterpreted various medical evidence demonstrating that she suffers from fibromyalgia,[3] but also improperly relied on a "waxes and wanes" theory when

---

[3] For example, Peterson points out that the record in this case includes findings of tender points based on physical examination, including a notation by Dr. Robert J. Kreutzmann in July 2013 of generalized muscle tenderness to palpitation and generalized tenderness of the wrists, hands, and forearms to

6

evaluating her claims.[4] Doc. 13 at 6–8.  Finally, Peterson concludes her argument by urging the court to remand her claims for proper evaluation under SSR 12-2p because "the ALJ decision is replete with statements that indicate a misunderstanding of the requirements for proof of the severity and even the diagnosis of [fibromyalgia]." Doc. 13 at 8.

Peterson's argument, however, overlooks a critical point—the ALJ did find that Peterson suffers from the MDI of fibromyalgia and that this condition is a severe impairment under step two of the sequential analysis. Doc. 15-2.  Thus, to the extent Peterson is arguing that the ALJ erred because she did not apply SSR 12-2p when evaluating whether Peterson had the severe MDI of fibromyalgia, her argument is "simply wrong." *See Christopher v. Colvin*, 2016 WL 4385864, at *7 (N.D. Fla. June 24, 2016) (holding that claimant's argument that ALJ had improperly applied SSR 12-2p when ALJ found claimant to have a severe MDI of fibromyalgia was "simply wrong").

Moreover, to the extent Peterson is challenging the ALJ's assessment of her RFC under SSR 12-2p, that argument is similarly unavailing.  Peterson contends that the ALJ

---

palpitation, as well as a notation by Dr. Iris Navarro-Millan in October 2013 of mild tenderness to palpitation over "some of her MCPs without swelling" and tenderness to palpitation over her paraspinal muscles in her back, and another notation by a physical therapist that same month of tenderness between her shoulder blades. Docs. 15-7 & 15-8.  Peterson emphasizes the ALJ's purported belittling of those tenderness findings in arguing that the ALJ failed to evaluate her claims in accordance with SSR 12-2p because, according to Peterson, "'tender points' are the only acceptable finding on physical examination in diagnosing fibromyalgia." Doc. 13 at 8.  However, what significance the ALJ placed on those tenderness findings, at least at step two of the sequential evaluation process, is of little consequence since the ALJ ultimately concluded that Peterson suffered from the severe MDI of fibromyalgia. Doc. 15-2.

[4] More specifically, Peterson contends that, when deciding her claims, the ALJ should not have given any consideration to the fact that her symptoms wax and wane, even though SSR 12-2p specifically instructs an ALJ to "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3017612, at *43644.

improperly attempted to "undermine" her fibromyalgia diagnosis, ignored the functional capacity opinion of Dr. Robert Kreutzmann, one of her treating physicians, and also discredited her subjective testimony about her symptomatology and the functional limitations she claims to have as a result of her fibromyalgia. *See* Doc. 13 at 4−8. The ALJ's decision makes clear, however, that SSR 12-2p was applied when evaluating Peterson's claims.  The ALJ thoroughly reviewed the medical evidence concerning Peterson's fibromyalgia but ultimately concluded that her condition did not prevent her from performing the RFC as assessed.

Substantial evidence supports this determination.  The ALJ's analysis shows that her decision to find Peterson's subjective limitations not entirely credible was based, in part, on her lack of continued follow-up care with Dr. Edmund G. LaCour, a rheumatologist, from 2011 to 2013; her performance of certain physical activities during a physical performance test in October 2013; and her ability to engage in a wide range of daily activities.[5]  Docs. 15-2, 15-7 & 15-8.  Moreover, the ALJ accommodated Peterson's fibromyalgia by reducing her RFC to sedentary work. Doc. 15-2.  For these reasons, the court finds that Peterson failed to demonstrate that her RFC was not properly assessed

---

[5] With respect to activities of daily living, the ALJ explained:
> The undersigned finds that the claimant's statements regarding her ability to engage in a wide range of daily activities are consistent with the residual functional capacity of this decision.  The claimant testified that her daily living activities are significantly restricted by her pain, but she has reported having highly functional activities of daily living elsewhere in the record.  For example, the claimant reported that she is able to care for her three-year old daughter, which requires dressing her and preparing her meals for her, that she is able to perform some daily chores with breaks, including doing the laundry, light cleaning, and loading the dishwasher, that she is able to shop for food and clothing, that she is able to drive an automobile, and that she is able to handle money and pay bills. The claimant described her hobbies and interests as reading, watching her daughter play, and spending time with her daughter.

Doc. 15-2 at 28.

under SSR 12-2p. *See Coates v. Colvin*, 2017 WL 695236, at *4–5 (M.D. Fla. Feb. 22, 2017) (finding that claimant failed to show that ALJ did not assess her RFC in accordance with SSR 12-2p when claimant's activities of daily living were inconsistent with her alleged limitations from fibromyalgia).

### 2. The ALJ's credibility determination is supported by substantial evidence.

Although the question of whether Peterson's fibromyalgia was properly evaluated under SSR 12-2p is intertwined with the ALJ's assessment of her credibility, the second issue presented in Peterson's brief focuses almost entirely on the propriety of the ALJ's credibility determination with respect to her subjective complaints of pain and other symptoms. Doc. 13. Therefore, the court will address that argument separately.

Subjective complaints of pain, symptoms, or other conditions may establish the presence of a disabling impairment if they are supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain or some other subjective symptom or condition, there must be "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 1991) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). "Nonetheless, the ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if [s]he articulates explicit and adequate reasons for doing so." *Jones v. Colvin*, 2016 WL

1162603, at *6 (N.D. Ala. Mar. 23, 2016). "The credibility determination does not need to refer to 'every piece of evidence in [her] decision [regarding credibility], so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (quoting *Dyer*, 395 F.3d at 1210–11).

Although the ALJ found that Peterson's severe MDI of fibromyalgia could reasonably be expected to cause her alleged symptoms, the ALJ did not believe that her statements concerning the intensity, persistence, and limiting effects of those symptoms were entirely credible. Doc. 15-2. The ALJ articulated explicit and adequate reasons for reaching that conclusion. Doc. 15-2. First, the objective medical evidence showed that Peterson experienced mild symptoms over an extended period of time, that medications helped control her symptoms, and that she did not continue treatment with Dr. LaCour, her rheumatologist, for several years.[6] Docs. 15-2, 15-7 & 15-8. There was also a lack of medical evidence showing any findings of joint swelling, muscle spasms, or muscle weakness. Docs. 15-2, 15-7 & 15-8. Peterson also engaged in a number of physical activities, including occasional lifting between 10 and 30 pounds during a physical performance test in October 2013 that, according to the ALJ, undermined her credibility regarding the alleged severity of her fibromyalgia. Docs. 15-2 & 15-8 at 422–23. The ALJ further noted that Peterson claimed sometimes to use a cane or walker to ambulate, but she had not been prescribed such a device and the medical records do not indicate that

---

[6] The ALJ notes that Peterson told Dr. Kreutzmann in May 2013 that she had not continued treatment with Dr. LaCour because he (Dr. LaCour) had told her he was no longer seeing fibromyalgia patients. Docs. 15-2 & 15-7. The ALJ found this explanation questionable, however, because Peterson saw Dr. LaCour on referral from Dr. Kreutzmann in April 2014. Docs. 15-2 & 15-8.

her fibromyalgia might warrant the use of such a device. Docs. 15-2, 15-7, 15-8 & 15-9. Finally, the ALJ noted that many of Peterson's alleged symptoms were present before she stopped working, and that those symptoms—whether present before or after she stopped working—did not prevent her from engaging in a wide range of daily activities. Docs. 15-2 & 15-7; *see Jones*, 2016 WL 1162603, at *8 ("An ALJ is entitled to consider a plaintiff's daily activities as one factor in making credibility determinations.") (citing 20 C.F.R. § 416.929(c)(3)).

In sum, the record shows that the ALJ specifically addressed Peterson's allegations of pain and other subjective limitations and that she provided explicit and reasonable reasons for rejecting Peterson's testimony. Therefore, the court finds that substantial evidence supports the ALJ's credibility determination.

### 3. The ALJ's decision to assign no weight to the opinion of Dr. Robert Kreutzmann is supported by substantial evidence.

Peterson contends that the ALJ erred by failing to give any weight to a physical capacity evaluation completed by Dr. Kreutzmann assessing the severity of Peterson's limitations caused by her fibromyalgia. Doc. 13 at 14–16. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). "The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is

an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor." *Coates*, 2017 WL 695236, at *5 (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011)). "Without such a statement, 'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Winschel*, 631 F.3d at 1178–79).

The weight given to a medical source's opinion depends upon, among other things, the examining and treating relationship the medical source has with the claimant, the evidence presented to support the medical source's opinion, how consistent the opinion is with the record as a whole, and the medical source's specialty. *Id.* (citing 20 C.F.R. § 404.1527). The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has found that good cause exists when the "treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.*

The record shows that Dr. Kreutzmann completed a physical capacity evaluation on Peterson's behalf on April 23, 2014. Doc. 15-8 at 456. In this evaluation, Dr. Kreutzmann assessed Peterson as being more severely limited by her fibromyalgia than reflected by her RFC. Docs. 15-2 & 15-8. Specifically, Dr. Kreutzmann opined that Peterson could sit, stand, and walk for only one hour per activity at one time and only one

hour per activity in an eight-hour work day;[7] could occasionally lift or carry up to five pounds but could never lift or carry anything heavier; and could use both hands for simple grasping but could not push, pull, or engage in fine manipulation, or use her feet for pushing and pulling of leg controls. Doc. 15-8 at 456. Dr. Kreutzmann further opined that Peterson could occasionally bend, squat, crawl, climb, and reach; was not restricted from working at unprotected heights; was mildly restricted from being around moving machinery; and was totally restricted from being exposed to marked changes in temperature and humidity and driving automotive equipment. Doc. 15-8 at 456. According to Dr. Kreutzmann, these limitations were due to Peterson's "severe fibromyalgia." Doc. 15-8 at 456.

The ALJ rejected this assessment from Dr. Kreutzmann, concluding that the opinions contained therein were "inconsistent with and uncorroborated by his own clinical examination findings of the claimant, as well as inconsistent with and uncorroborated by the other objective medical evidence of record." Doc. 15-2 at 24. The ALJ then provided her reasoning for this decision, highlighting a number of inconsistencies between the opinions contained in Dr. Kreutzmann's physical capacity evaluation and the remainder of the medical evidence, including (1) the fact that a rheumatologist at UAB who examined Peterson and performed extensive laboratory testing in August 2013 essentially found no abnormalities and only mild tenderness to palpitation over her wrists and paraspinal muscles; (2) in April 2014, Dr. LaCour stated

---

[7] In other words, Dr. Kreutzmann opined that Peterson could sit, stand, and walk for one hour per activity during an eight-hour workday for a combined three hours of activity per eight-hour workday. Doc. 15-8 at 456.

that Peterson did not have symptoms supportive of connective tissue disease; (3) the only "positive" findings recorded by Dr. Kreutzmann and Dr. LaCour are joint tenderness and soft tissue tenderness; (4) in March 2014, one month prior to the physical capacity evaluation, Dr. Kreutzmann opined that Peterson had only mild tenderness that was not "disabling"; and (5) the limitations in Dr. Kreutzmann's physical capacity evaluation are inconsistent with the claimant's performance of certain physical activities during a physical performance test in October 2013. Docs. 15-2, 15-7 & 15-8.

The court finds that substantial evidence supports the ALJ's determination that the opinions contained in the physical capacity evaluation completed by Dr. Kreutzmann were entitled to no weight. As explained in the ALJ's decision, Dr. Kreutzmann's treatment notes and the objective medical evidence are inconsistent with the severe limitations he placed on Peterson in the April 2014 physical capacity evaluation. Because the ALJ presented sufficient good cause for rejecting Dr. Kreutzmann's opinions in the physical capacity evaluation, the court will not disturb the ALJ's decision as to this issue on appeal.

**4. Peterson's residual functional capacity as assessed by the ALJ is supported by substantial evidence.**

A claimant's RFC is her maximum functionality in light of her limitations. *See* 20 C.F.R. §§ 416.920(e) & 416.945(a)(1)–(3). At the hearing level, the ALJ has the responsibility for assessing the claimant's RFC. *See* 20 C.F.R. § 416.946(c); 20 C.F.R. § 416.927(d)(2). An RFC is an administrative assessment, and ultimately it is the Commissioner's responsibility to determine it. 20 C.F.R. §§ 404.1512 & 416.912.

"While the ALJ will consider evidence and opinions from physicians and state agency medical and psychological consultants, the RFC finding is reserved for the ALJ alone." *Driggers v. Astrue*, 2012 WL 4478963, at *3 (N.D. Ala. Sept. 20, 2012) (citing 20 C.F.R. §§ 404.1527(e)(2) & 416.927(e)(2)).

As discussed above, the ALJ reviewed the medical evidence and assessed Peterson an RFC that accommodated her fibromyalgia and the limitations she suffered as a result of that condition. Moreover, for the reasons discussed above, the ALJ did not find Peterson's statements regarding her functional limitations to be entirely credible because the objective medical evidence did not establish that she experienced symptomatology and functional limitations to such a disabling degree, and Peterson has failed to show on appeal that her impairments caused limitations beyond those accommodated by the ALJ's RFC assessment. Accordingly, with Peterson failing to persuade the court that the ALJ erred in assessing her RFC, the court finds that substantial evidence supports the ALJ's RFC determination.

## IV. CONCLUSION

Accordingly, for the reasons stated above, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE this 15th day of March, 2017.

/s/ Gray M. Borden
UNITED STATES MAGISTRATE JUDGE